8036

LAURENS TELEPHONE CO. v. ENTERPRISE BANK.

1. LANDLORD AND TENANT—EVIDENCE.—Where a tenant proves damages for having to move out of a building without preparation he would be entitled to a verdict, if the removal was caused by wrongful act of the landlord; but where the jury has found for the landlord, ruling out evidence that the tenant's business at that time would have been more remunerative than usual on account of a strike is of no consequence.

2. IBID.—IBID.—WILFULNESS.—In such action, that the management of the corporation landlord and the corporation tenant were on good terms; that the landlord bank had allowed the tenant to overdraw its account; that the landlord had been informed by its grantor that the tenancy was from month to month; that the president of the landlord had no ill will toward the tenant; that he took the advice of counsel and acted thereon in the belief that he was within his legal rights, was competent as tending to show the landlord acted without wilfulness or malice.

3. IBID.—IBID.—CORPORATIONS.—THE ADMISSION of the representative of a corporation through whom its contracts are made that its tenancy was from month to month is competent against the corporation.

4. IBID.—CHARGE.—Under the issues here the appellant should not complain of an instruction that the issue of the manner of its tenancy was a difficult and perplexing question and the pivotal one in the case.

*Wright* v. *Willoughby*, 79 S. C. 438, *distinguished from this case.*

5. IBID.—A tenancy from year to year may be changed to a tenancy from month to month or to a tenancy at will by act of the parties.

6. IBID.—The definition of a tenancy at will construed to mean that to constitute a tenancy at will there must not only be a tenancy for an indefinite time, but it must be understood to be subject to the will of the landlord. The statutory provision that a tenancy shall be for one year unless stipulated for a shorter period does not affect such tenancy.

7. IBID.—Instruction that a tenant at will is entitled to reasonable notice to quit, and a tenant from month to month to not less than thirty days' notice, is favorable to appellant.

8. PUNITIVE DAMAGES.—Since there was undisputed evidence of actual loss suffered by plaintiff, and the jury found for defendant on the issue of actual damages, the exception as to the charge on punitive damages becomes unimportant.

9. EVIDENCE—WILFULNESS.—The advice of counsel may be taken into consideration on the issue of whether one party has wilfully violated the rights of another.

10. IBID.—IBID.—PRESUMPTIONS.—IN AN ACTION OF TORT, the presumption that every one knows the law and will obey it may be weak or strong, according to the clearness or obscurity of the law or other circumstances, and may be weighed by the jury on the issue of wilfulness.

Before C. C. FEATHERSTONE, Special Judge, April, 1910. Affirmed.

Action by Laurens Telephone Company against Enterprise Bank, N. B. Dial, E. W. Martin and E. L. Hertzog & Company.    Plaintiff appeals.

*Messrs. John Gary · Evans, Cannon & Blackwell* and *Richey & Richey,* for appellant, cite: *Testimony offered to prove damages remotely connected was competent:* 31 S. C. 52; 65 S. C. 506.    *Judge should not have instructed jury that the manner of appellant's holding perplexed him:* 53 S. C. 150.    *Instruction that if tenancy had expired or was one at will it could be dispossessed provided no more force was used than necessary, was error:* 79 S. C. 428; 18 S. C. 108.    *Time of notice to quit should not have been fixed by the Court:* 44 S. C. 526.    *Acting under advice of counsel should not be considered in determining if punitive damages should be awarded:* 16 S. C. 401; 57 S. C. 227.

*Messrs. Dial & Todd* and *Nichols & Nichols,* contra. *Messrs. Dial & Todd* cite: *Proof of possible profit should be excluded:* 19 S. C. 228; 13 Cyc. 49, 50, 219; 25 S. C. 68; 41 Am. R. 19; 57 S. C. 191; 63 S. C. 469; 11 Rich. 251; 33 Mich. 514.    *To show if a party acted in good faith the sources from which he sought and derived information may be shown:* 33 Mich. 514; 13 Cyc. 120.    *Admissions of officer are competent against the corporation:* 12 Rich. L. 634; Story on Agy., sec. 134; 79 S. C. 451; 13 Cyc. 120.    *After expiration of a definite term nature of tenancy may be changed:* 24 Cyc. 1031, 1028, 1033, 1014; 18 Ency. 198 (c. c.); 66 S. C. 171; 60 S. C. 392; Code 1902, 2416, 2650, 2652.    *Tenant may be dispossessed otherwise than by statutory remedy:* 58 S. C. 145; 39 L. R. A. 415; 16 L. R. A. 798; Taylor on L. and T., sec. 532; 5 L. R. A. 206; 26 N. J. L. 525.    *Definition of tenancy at will:* 44 S. C. 464; 24 Cyc. 1036-7; 14 N. J. L. 523; 14 N. C. 414; 18 Ency. 182, 186.    *Reasonable notice to quit is all that is required:* 12 Ency. 673, 674; 18 Ency. 186-9.

*Definition of tenancy from month to month:* 24 Cyc. 1034-5-6; 29 S. E. 332; 45 Am. R. 379; 24 Cyc. 1040; 66 S. C. 162. *That party acted under advice of counsel is a circumstance to be considered on the issue of punitive damages:* 69 S. C. 444; 62 S. C. 270; 64 S. C. 423; 13 Cyc. 120; 13 Mich. 514. *Right of landlord to enter and eject tenant:* Taylor on L. & T., sec. 532; 1 Strob. 313; 2 N. & McC. 68; 2 Bail. 4; Rice 64; 58 S. C. 145.

November 15, 1911. The opinion of the Court was delivered by

MR. JUSTICE WOODS. On May 3, 1907, the Enterprise Bank purchased from E. W. Martin and Mrs. Essie Martin, his wife, a corner lot in the city of Laurens on which was situated a two story frame building. The Laurens Telephone Company, plaintiff in this action, occupied two rooms in the second floor of this building as a telephone exchange. Shortly after the purchase Mr. Dial, the president of the bank, notified Mr. Richey, the manager of the telephone company, that the bank intended to erect a new banking house on the lot, that the building then standing would soon be torn down, and that the telephone company would be required to move its offices. Plaintiff, however, continued to occupy the rooms until the morning of August 6, 1907, when E. L. Hertzog, a contractor, acting under the written authority of Mr. Dial and E. W. Martin, entered upon the premises with a force of hands and began to tear off the roof of the building. Thereupon the plaintiff moved its property out.

This action is brought by the telephone company to recover of the defendants actual and punitive damages for the alleged unlawful, wilful and malicious ejection on the morning of August 6. The plaintiff alleges that it was a tenant of the premises from year to year, that the term under which it was then holding possession did not expire until January 1, 1908, and that the action of the defend-

ants in forcibly ejecting its operators and agents was wrongful and malicious. The defendants in their answer allege that plaintiff was a tenant from month to month, and that it had received ample notice to vacate from both defendants, Martin and Dial, but refused to do so. They further deny that the ejection was malicious, and allege that the telephone company, by its board of directors, had expressly waived any right it may have had to occupy the premises longer. Plaintiff appeals from a judgment in favor of defendants, assigning error in the admission of testimony, in the charge of the Circuit Judge, and the refusal of the motion for a new trial.

The undisputed facts bearing on the character of the plaintiff's possession are these: The upper floor of the building was leased by the telephone company on January 1, 1901, for a term of five years, from J. M. Robertson, who then owned the property. Upon his death in 1904 the building passed to Beuben Robertson, his son, who died in April, 1906, leaving all his estate to his two granddaughters, Mrs. Martin and Mrs. Harris. The latter afterwards transferred her interest to E. W. Martin, who with his wife conveyed to the defendant bank. During the continuance of the lease plaintiff paid its monthly rent first to J. M. Robertson and then to Reuben Robertson. At the expiration of the lease on January 1, 1906, there was no written contract of renewal, but plaintiff paid the same monthly rent to Reuben Robertson, and after his death to E. W. Martin, as the agent for his wife and her sister.

Martin testified that he and Mr. Richey could not agree on the rent for 1907, that he told Mr. Richey that he had plans to sell or improve the property, that for the year 1907 he could rent the property only by the month, that he told the defendant bank when he sold it in May, 1907, that the telephone company was a tenant from month to month, that on May 5, 1907, he notified Mr. Richey of his sale to the bank and of the necessity of surrender of possession so

that the building could be removed to make place for the new bank building, and that at Mr. Richey's request he allowed him until June 15 to vacate.    There was other testimony on behalf of the defendants tending to show that the tenancy of 1907 was from month to month, and that after June 15, 1907, it became a tenancy at will under an arrangement that the plaintiff should not be required to vacate until the contractor for the new bank building was ready to commence work.    There was also testimony that the board of directors of the plaintiff company had passed a resolution not to claim the property for the year, and to vacate it as soon as other property could be obtained; and that the new location for the telephone exchange had been rented from July 1, 1907.

On behalf of the plaintiff the testimony of Mr. Richey, the manager, was that he had not agreed to hold as tenant from month to month and that he claimed under the law and his contract with the owners to have a right to the property for the entire year 1907, that he did not agree to vacate on June 15, or on any other definite date, that he had waived the plaintiff's right to hold until January, 1908, only to the extent that he agreed to vacate when he had installed a new switchboard in the new location of the telephone exchange, that he had not been able to get the new location ready and install the new switchboard when the defendants began to take the roof away against his protest and his claim of right to hold the property.

The evidence is very voluminous, but the above statement is sufficient to indicate that the issue of both fact and law was sharply made as to the nature of the plaintiff's tenancy.    We take up the grounds of appeal in the order in which they were argued by counsel for plaintiff.

1. The plaintiff proved beyond dispute that it had suffered actual loss of several hundred dollars from the sudden interruption of its business by having to remove its

exchange without preparation. If this necessity was forced upon it by any wrongful action of the defendants, then damages would have followed as a matter of course. But the jury on this issue found in favor of the defendants, and it would not therefore have affected the result to allow the plaintiff to introduce evidence that its business at this particular time would have been unusually large, because a strike by the employees of the telegraph company at Laurens would have made the public more dependent on the telephone company for quick communication. The exception, therefore, alleging error in the exclusion of such evidence is of no consequence unless there was error on other points requiring a new trial.

2. The evidence to the effect that the management of the bank and the telephone company were on amicable terms, that the bank had allowed the telephone company to overdraw its accounts, that Mr. Dial, the president of the bank, had been informed by Martin, from whom the bank purchased, that the plaintiff was renting by the month, that Mr. Dial had no ill will towards the plaintiff, that he took the advice of counsel and acted thereon in the belief that he was within his legal rights, was all competent, as tending to disprove the charge that the defendants acted wilfully and maliciously in taking the roof off the building and thus forcing the plaintiff to vacate.

3. Mr. Richey being the representative of the company through whom its contracts were made, the testimony of the witness Brooks, that he had admitted that the tenancy was from month to month, was clearly competent. *Southern Ry.* v. *Howell,* 79 S. C. 281.

4. In view of the issue of fact as to the character of the holding of the telephone company which so plainly appears from the above statement of the evidence adduced, there was no error in this instruction to the jury: "Now, gentlemen, the pivotal question in this case, the crux of this case is simply this: How was the Laurens Telephone Company

there? Was it rightfully and legally in possession of the premises, and did it have a right to stay there?" Nearly all the testimony was directed to this issue. Certainly in view of the positive and strong testimony of a tenancy from month to month followed by a tenancy at will, there was not the least ground for the plaintiff to contend that the question of the character of its possession was not a difficult and perplexing one.

Under the law as established in this State and charged by the presiding Judge, this was without doubt also the pivotal question. The charge was in substance that if the jury found that the plaintiff was a tenant by the year entitled to hold until January 1, 1908, then the act of the defendants in taking off the roof of the building in August, 1907, thus making it necessary for plaintiff to vacate, was wrongful and the plaintiff should recover damages; on the other hand, if they found that plaintiff was a tenant from month to month, or a tenant at will and refused to quit after due notice, then the defendant bank as the owner of the property had a right to go upon the premises and take possession if it could do so without committing a breach of the peace or a trespass upon the tenant's person or personal property, and the plaintiff should not recover. The principle of law so charged was laid down in *Willoughby* v. *Atlantic C. L. Ry. Co.,* 32 S. C. 410, 11 S. E. 339, and *Rush* v. *Aiken Mfg. Co.,* 58 S. C. 145, 36 S. E. 497. The case of *Wright* v. *Willoughby,* 79 S. C. 438, 60 S. E. 971, relied on by appellant, was not a case of tenancy and has no application.

5. The eighth exception was as follows: "The plaintiff requested the presiding Judge to charge the jury as follows: 'If A enters upon real property and takes possession thereof as the tenant of B under a contract or lease for a definite term of years, at a specified rent to be paid monthly, and B or his grantee allows A to remain in possession of said property after the termination of the lease without any agreement as to how long he shall remain

in possession, and collects the usual rent, A thereby becomes a tenant from year to year, and would have the legal right to the possession of the premises until the end of the calendar year.' It is respectfully submitted that his Honor erred in modifying plaintff's first request to charge, which modification was as follows: 'I charge you that is the law in the absence of any change of contract. The law presumes that in the absence of testimony. But after all the facts are out presumptions disappear, and it is a question of fact for you to say whether or not plaintiff was a tenant from year to year, or a tenant at will. With that modification, I charge you that is a sound proposition of law.' The error being that the plaintiff had the right to have the first request to charge charged without modification." In *Hillhouse* v. *Jennings,* 60 S. C. 392, 38 S. E. 596, one of the propositions laid down by Mr. Justice Gary for the Court was: "A parol lease under which the tenant enters upon the premises shall, after the term of twelve months from the time of entering upon the premises, have the effect of an estate at will only." But as held in *Hellams* v. *Patton,* 44 S. C. 454, 22 S. E. 608, and *Matthews* v. *Hipp,* 66 S. C. 162, 44 S. E. 577, such a tenancy at will may be converted into a tenancy for the year by acts of the parties indicating that intention. The direct issue of fact as to the nature of the tenancy was properly submitted to the jury under a statement of the law required by these cases.

6. Exception is taken to this definition of tenancy at will given to the jury: "Now what is a tenancy at will about which I have been speaking? It is where one person rents from another without any definite time being fixed for the duration of the possession, where the tenant has not the right under his contract to stay for any definite or certain length of time, where he is there at the will of the landlord, where the landlord has the right to sever the relation of landlord and tenant by giving reasonable notice to quit. And in that connection I want to read

you from the Encyclopedia of Law. I read from page 670. Now, I am talking about a tenancy at will, not a tenancy from year to year: 'A tenancy at will is where one person lets land to another to hold at the will of the lessor.' In other words, Mr. Foreman, you rent there to your fellow juror; you rent him a farm; he holds that as long as you want him to hold it, holds it at your will, no definite time is fixed.' " The context makes perfectly clear the meaning of the instruction to be that to constitute tenancy at will there must not only be tenancy for an indefinite time, but it must be understood to be subject to the will of the landlord. There is, therefore, no ground for criticism of the instruction on the ground that the statute provides that a tenancy "shall be understood to be for one year unless it is stipulated to be for a shorter term."

7. The contention that there was error in instructing the jury that a tenant at will is entitled to reasonable notice to quit cannot avail the plaintiff, because the instruction was favorable to it. Nor can it avail the plaintiff that the Circuit Judge instructed the jury that there must be a reasonable notice, not less than thirty days, in order to terminate a tenancy from month to month, for the requirement of not less than thirty days' notice prevented the jury from considering less notice sufficient, while they were left at liberty to consider that notice insufficient.

8. Since there was undisputed evidence of actual loss suffered by the plaintiff and the jury refused to find actual damages, and thus found that the defendant bank had acted within its legal rights, the exception as to the charge on punitive damages becomes unimportant.

Error is charged in the first three sentences of the following extract from the charge: "If the jury believe that the defendants took legal counsel and honestly submitted all the facts to a competent and safe attorney, and that they acted under advice of counsel,

that is a circumstance which may be considered by you in determining whether or not punitive damages should be awarded. In other words, if all the facts and circumstances in this case show you that the defendants honestly believed that they were acting within their legal rights, and that they did not act in a wilful and high-handed manner, and did not consciously, knowingly invade the rghts of the plaintiff, punitive damages can not be awarded. In this connection, I charge you, gentlemen, as I charged you awhile ago, every man is presumed to know the law, but such presumption is only for certain purposes, and such rule has no application when you come to determine whether or not a man is liable for punitive damages. Before punitive damages could be awarded, a man must consciously, knowingly violate the law. Now, gentlemen, I think you understand that. The law does not allow any man to take the law into his own hands, and if he knows that he is doing wrong, and in utter disregard for his neighbor he wilfully and wantonly and in a high-handed manner invades the rights of his neighbor, the law says it is your duty to award punitive damages." The specifications of error are: "(a) That acts committed by one person or persons in utter disregard of the rights of another under advice of counsel are acts from which jury may find actual and punitive damages. (b) The rule is that every man is presumed to know the law, and said rule is applicable when the jury comes to the consideration of the question whether or not a man is liable for punitive damages." The rule that the advice of counsel may be taken into consideration on the question whether one party has wilfully violated the rights of another was laid down in *Baker* v. *Hornick,* 57 S. C. 213, 35 S. E. 524.

The statement of the instruction that the presumption of knowledge of the law "has no application when you come to determine whether or not a man is liable for punitive damages," we do not think is accurate. True, there is no such conclusive legal presumption as

obtains in the administration of the criminal law; but every man is allowed to order his life and conduct his affairs on the presumption that all others know and will obey the law, and not invade his legal rights. In an action of tort this presumption may be weak or strong, according to the clearness or obscurity of the law or other circumstances, and may be so weighed by the jury on the issue of wilfulness. Furthermore, the defendant may completely rebut the presumption and completely meet the charge of wilfulness by evidence convincing to the jury that he made an honest mistake as to the law and his rights thereunder. The instruction on this subject was made immaterial, however, by the holding of the jury that the defendants had not violated the law.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.