18048

W. W. LYNCH and Celestial M. Lynch, as Co-Administrators of the Estate of William Richard Lynch, Respondents, v. James David ALEXANDER, Appellant.

(130 S. E. (2d) 563)

*Willcox, Hardee, Houck, Palmer & O'Farrel* and *W. Laurier O'Farrell,* of Florence, *for Appellant,*

*Messrs. Hyman & Morgan,* of Florence, *for Respondents,*

April 9, 1963.

Lewis, Justice.

This is an appeal by the defendant, James David Alexander, from a judgment entered against him in the Court of Common Pleas for Florence County. Separate actions were instituted against the defendant by the plaintiffs as co-administrators of the estate of William Richard Lynch to recover for his wrongful death and conscious pain and suffering, resulting from injuries received while riding in an automobile driven by the defendant. The two actions were consolidated and tried together, resulting in a verdict for the plaintiffs for the sum of $40,000.00 actual damages in the wrongful death action and a verdict for the defendant in the action for conscious pain and suffering.

At appropriate stages during the trial of the case the defendant made motions for a nonsuit and directed verdict in his favor and, after the verdict, for judgment *non obstante verdicto,* all upon the ground that the only reasonable inference to be drawn from the evidence was that the deceased was guilty of contributory recklessness as a matter of law so as to bar plaintiffs of recovery. An alternative motion was also made by the defendant for a new trial upon the ground that the verdict was so grossly excessive as to indicate caprice, passion, and prejudice on the part of the jury. These motions were denied by the trial judge and this appeal followed.

The exceptions present two questions for determination, namely:

(1) Was the deceased guilty of contributory recklessness as a matter of law; and

(2) Was the verdict so grossly excessive as to indicate caprice, passion or prejudice on the part of the jury?

Since this action is one to recover from the operator of a motor vehicle for injuries sustained by a guest passenger, liability of the defendant is governed by the provisions of Section 46-801 of the 1962 Code of Laws of South Carolina. Under this statute liability to a guest is restricted to cases where injury has resulted from either intentional or reckless misconduct of the owner or operator of the motor vehicle. *Jackson v. Jackson,* 234 S. C. 291, 108 S. E. (2d) 86. There is no question in this appeal as to the fact that the defendant was operating his automobile at the time of the collision in question in a reckless manner and is liable to the plaintiffs unless the deceased was guilty of contributory recklessness.

For, to bar recovery by a guest passenger in a motor vehicle on the ground of contributory negligence, the guest must have been guilty of the same degree of negligence as that of the operator of the vehicle, that is, contributory recklessness. *Ardis v. Griffin,* 239, S. C. 529, 123 S. E. (2d) 876.

The question of whether or not the deceased was guilty of contributory recklessness as a matter of law must be determined from the facts of the case, considering the testimony and the reasonable inferences to be drawn therefrom in the light most favorable to the plaintiffs. Questions as to contributory recklessness in such cases are usually for determination by the jury, and become an issue of law for the court only where the conclusion that the guest was guilty of contributory recklessness is the only reasonable inference to be drawn from the evidence. *Croker v. Weathers,* 240 S. C. 412, 126 S. E. (2d) 335.

The collision occurred about six o'clock on the morning of December 31, 1960, on U. S. Highway No. 378, about three miles east of Sumter, South Carolina, when the automobile in which the deceased was riding, travelling at a speed in excess of eighty miles per hour in foggy weather, left the highway and crashed into a pile of rock. The defendant was driving at the time and had as his guests in the car the deceased and two other young men. The three guests joined the defendant earlier in the night at Florence, South Carolina. The defendant apparently invited the others for a ride with him in a new car which he had in his possession. They left Florence and proceeded to Timmonsville, a distance of approximately twelve (12) miles. In going to Timmonsville, the defendant drove the automobile for a portion of the way at a speed of approximately 120 miles per hour. The other occupants, including the plaintiff, complained to the defendant about the excessive speed and asked him several times to slow down. Speed was reduced to a reasonable speed as they approached Timmonsville. The testimony for the plaintiffs is not entirely clear on the point, but the defendant testified that they stopped briefly, without getting out of the car, in Timmonsville while looking at an automobile show window.

Upon leaving Timmonsville, the parties drove to Sumter, South Carolina, a distance of about 25 miles from Timmonsville and about 38 miles from Florence. During this part of the trip the defendant drove at a reasonable speed. While in Sumter, they stopped at a drive-in. There gasoline was purchased and the defendant drank two cans of beer. When they left Sumter, the defendant proceeded toward Lake City, South Carolina, on U. S. Highway 378, a different route from that taken in going to Sumter. After going a short distance on Highway No. 378, rather thick fog was encountered along the road. Under these conditions, the defendant increased the speed of his automobile to approximately 80 miles per hour, over the protests of the other occupants of the car. He proceeded only a short distance

thereafter before he lost control of the car and the collision in question occurred.

The testimony, therefore, shows that, after the defendant drove his automobile at a speed of 120 miles per hour between Florence and Timmonsville, the deceased and the other guests remained in the car and continued the trip with the defendant until the collision occurred, although they had opportunity to leave the automobile prior thereto. The defendant contends that when he drove the automobile at a speed of 120 miles per hour between Florence and Timmonsville, the deceased in the exercise of due care for his own safety should have left the vehicle at the first opportunity, and that his failure to do so amounted to contributory recklessness on his part.

The general rules relating to the duty of a guest to protest the manner of the operation of the automobile and to leave it for his own protection are set forth as follows in the case of *Samuels v. Bowers,* 232 N. C. 149, 59 S. E. (2d) 787, 790:

"The principle is generally recognized that when a gratuitous passenger becomes aware that the automobile in which he is riding is being persistently driven at an excessive and dangerous speed, the duty devolves upon him in the exercise of due care for his own safety to caution the driver, and, if his warning is disregarded and speed unaltered, to request that the automobile be stopped and he be permitted to leave the car. *Bogen v. Bogen, supra* [220 N. C. 648, 18 S. E. (2d) 162]; 4 Blashfield Cyc. Auto Law, Perm. Ed., § 2415; 5 Am. Jur. 772. He may not acquiesce in a continued course of negligent conduct on the part of the driver and then claim damages from him for injury proximately resulting therefrom. But this duty is not absolute and is dependent on circumstances. 4 Blashfield Cyc. Auto Law, Perm. Ed., § 2414, p. 568; *O'Neal v. Caffarello,* 303 Ill. App. 574, 25 N. E. (2d) 534. Where conflicting inferences may be drawn from the circumstances, whether the failure of the passenger

to avail himself of opportunity for affirmative action for his own safety should constitute contributory negligence is a matter for the jury.

"In 4 Blashfield Cyc. Auto Law, Perm. Ed., § 2415, p. 578, the law on this point is stated as follows: 'Even so, however, it is not the duty of a guest, under all circumstances of negligent or reckless driving, to ask to be let out, nor is it necessarily contributory negligence as a matter of law for a passenger not to insist upon being permitted to leave an automobile driven at excessive speed. * * * A guest who feels himself endangered by the excessive speed of the vehicle cannot ordinarily be expected to leap from the car while it is still in rapid motion. * * * And even if there is a reasonable opportunity to leave the car, failure to leave is not negligence unless a person in the exercise of ordinary care would have done so under the circumstances.' "

The rule governing the duty of a guest to leave a motor vehicle for his own safety is concisely stated in 61 C. J. S. Motor Vehicles § 491, p. 116 and in 65 C. J. S. Negligence § 155, p. 796 as follows:

"If an occupant of a vehicle knows, or in the exercise of ordinary care should know, that to remain longer in the vehicle is dangerous, and, if under the same or similar circumstances a reasonably prudent person would leave or withdraw from the vehicle, he is guilty of contributory negligence if, a reasonable opportunity therefor being afforded, he fails to do so, and such failure contributes proximately to cause his injury."

See also: 5A Am. Jur., Automobile and Highway Traffic, Sections 800 and 802.

The test, therefore, is not whether a guest, knowing that the driver's conduct is improper, has a reasonable opportunity to leave the automobile, but whether a reasonable opportunity being afforded, a person in the exercise of ordinary care would have done so under the circumstances. *Van Fleet v. Heyler,* 51 Cal. App. (2d) 719, 125 P. (2d) 586.

Applying the foregoing principles to the facts of this case, we do not think that it can be properly held that the failure of the deceased to leave the vehicle of the defendant before the collision amounted to contributory recklessness as a matter of law. Although the defendant drank two cans of beer, there is no evidence or contention that he was under the influence of intoxicants or that he was in any way an incompetent driver. When the defendant first drove his automobile at an excessive rate of speed, the deceased and the other guests protested and the speed of the vehicle was reduced to a reasonable rate. The parties then continued the trip to Sumter, a distance of about 25 miles, during which the defendant drove at a reasonable rate of speed. It was only after leaving Sumter and shortly before the collision when the weather became foggy that the defendant again drove at an excessive speed, and then over the protests of the other occupants. It is fairly inferable from the testimony that the defendant had acceded to the protests of his guests and would not again drive his automobile at an excessive rate of speed on the trip. It was very late at night and the parties were some distance from home, making it no doubt difficult for the deceased to secure return transportation, if he had left the automobile. Whether the deceased in failing to leave the automobile of the defendant was guilty of a reckless disregard of his own safety and whether such contributed as a proximate cause to his fatal injuries was a question for the jury to determine, under all of the facts and circumstances.

The remaining question to be decided is whether the verdict in this case is so grossly excessive as to indicate caprice, passion, or prejudice on the part of the jury.

The jury returned a verdict in the amount of $40,000.00 actual damages. The trial judge did not consider that the amount of the verdict indicated undue liberality, or caprice, passion, or prejudice on the part of the jury, and refused to reduce the amount of the verdict or set it aside *in toto*.

The rule is well settled in this State that this court cannot reduce the verdict if the amount thereof is such as to indicate merely undue liberality on the part of the jury, and "can reverse for excessiveness only when the verdict is so out of proportion to the evidence that it clearly indicates that it was influenced by partiality, prejudice, passion, caprice, or other considerations not founded upon the evidence." *Peagler v. Atlantic Coast Line Railroad Company,* 234 S. C. 140, 107 S. E. (2d) 15, 84 A. L. R. (2d) 794.

The testimony is that the deceased was eighteen years of age, in the ninth grade of school, of good habits, devoted and obedient to his family, and the only son of three children of the plaintiffs. He was unemployed, but helped with odd jobs around the home and occasionally made a little money doing mechanical work at a garage. The deceased had previously sustained injuries in an accident and was not doing too well in school. He resided in the home with his parents and they experienced the natural feelings of grief in the loss of a loving and only son. We must assume under the record that the beneficiaries suffered no pecuniary loss.

In this case the elements of damage for wrongful death are such mental shock and suffering, wounded feelings, grief and sorrow, loss of companionship and deprivation of the use and comfort of the intestate's society as may have been sustained by the beneficiaries as a result of the death of the intestate. *Mock v. Atlantic Coast Line RR. Co.,* 227 S. C. 245, 87 S. E. (2d) 830. These are intangibles, the value of which cannot be determined by any fixed yardstick. Their loss to the beneficiaries must be estimated by the jury in the exercise of their sound judgment under all of the facts and circumstances of the case. Under the foregoing facts, we cannot say that the size of the verdict is such as to indicate passion or prejudice on the part of the jury.

Affirmed.

TAYLOR, C. J., and Moss, BUSSEY and BRAILSFORD, JJ., concur.